IN THE SUPERIOR COURT



**FILED**

January 28, 2021
SX-2014-CV-00361
TAMARA CHARLES
CLERK OF THE COURT

## SUPERIOR COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

MICHAEL KITNURSE,

PLAINTIFF,

v.

MARSHALL AND STERLING AND
CERTAIN UNDERWRITERS AT LLOYDS
OF LONDON SUBSCRIBING TO POLICY
NUMBER CPS200601660,

DEFENDANTS.

Civil No. SX-14-CV-361

ACTION FOR DAMAGES

JURY TRIAL DEMANDED

CITE AS: 2021 VI SUPER 8P

**Appearances:**
**Lee J. Rohn, Esq.**
Lee J. Rohn and Associates, LLC
Christiansted, U.S. Virgin Islands
*For Plaintiff*

**James L. Hymes, III, Esq.**
Law Offices of James L. Hymes, III, P.C.
St. Thomas, U.S. Virgin Islands
*For Defendant Marshall and Sterling*

**Garry Garten, Esq.**
Law Office of Garry Garten
St. Thomas, U.S. Virgin Islands
*For Defendant Certain Underwriters at Lloyds of London*

## MEMORANDUM OPINION AND ORDER

**WILLOCKS, Presiding Judge**

¶ 1    **THIS MATTER** came before the Court on the following filings:

On May 11, 2018, Plaintiff Michael Kitnurse (hereinafter "Plaintiff") filed a motion to amend complaint. On May 24, 2018, Defendant Marshall and Sterling (hereinafter "M&S") filed an opposition to Plaintiff's motion. Defendant Certain Underwriters at Lloyds of London subscribing to policy number CPS200601660 (hereinafter "Lloyds of London" and collectively with Defendant M&S, "Defendants") did not file an opposition. On June 11, 2018, Plaintiff filed a reply and a motion to file Plaintiff's reply late. Defendants did not file an opposition to Plaintiff's motion for leave to file Plaintiff's reply late.

On November 7, 2018, Plaintiff and Defendant M&S filed a stipulation for dismissal with prejudice of Plaintiff's claims against Defendant M&S.

On December 10, 2018, Plaintiff filed a motion for entry of default against Defendant Lloyds of London. Subsequently, Defendant Lloyds of London filed an opposition and Plaintiff filed a reply thereafter.

On February 20, 2019, Defendant M&S filed a notice to the Court. On February 22, 2019, Plaintiff filed a response to Defendant M&S's February 20, 2019 notice and motion to enforce settlement. On March 7, 2019, Defendant M&S filed a document that consisted of its (i) motion to strike Plaintiff's response and motion to enforce settlement, (ii) opposition to Plaintiff's motion to enforce settlement, (iii) motion to enforce and enter judgment on the mediated settlement agreement, and (iv) notice of filing the document under seal. On March 15, 2019, Defendant M&S filed a motion for entry of order permitting filing under seal, nunc pro tunc.

On December 10, 2019, Plaintiff and Defendant M&S filed a joint motion for dismissal with prejudice as to Defendant M&S. On December 16, 2019 Defendant Lloyds of London filed an opposition thereto. On January 7, 2020, Defendant M&S filed a reply to Defendant Lloyds of London's opposition. On January 9, 2020, Kayla Kitnurse[1] filed a reply to Defendant Lloyds of London's opposition.

## BACKGROUND

¶ 2    On September 8, 2014, Plaintiff, as the assignee of claims from John Phuoc-le d/b/a Nails Time, filed a complaint against Defendants. In the complaint, Plaintiff alleged, inter alia, that "[a] law suit was brought in St. Croix entitled *Michael Kitnurse vs. John Phuoc-le d/b/a Nails Time and Jane Doe*, District Court Civil No. 112/2012," "[a]s such John Phuoc-le tendered the defense and indemnification of the claims to Defendant Lloyds of London," "Lloyds of London denied indemnification of the claim," "[a]s a result of the denial, and due to economic necessity John Phuoc-le entered into a consent judgment in favor of Kitnurse in the amount of $1,000,000... and assigned all claims he had against [Defendants]," "[t]he policy is a commercial general liability," "[t]he policy required [Defendant Lloyds of London] to pay those sums that Phuoc-le may become legally obligated to pay for bodily injury arising out of an occurrence that takes place in the coverage territory during the policy period," "Phuoc-le could not afford counsel to defend him in

---

[1] According to Plaintiff's motion to amend complaint, Kayla Kitnurse is the daughter of Plaintiff. While Plaintiff's motion to amend complaint moved to substitute her as the personal representative of Plaintiff's estate, the motion is still currently pending. Thus, at this juncture, she is not a party to this lawsuit.

a declaratory judgment action filed against him by Lloyds of London and reasonably believed he would lose the claim of Kitnurse at trial and not be able to pay the verdict which Defendant Lloyds of London had refused to indemnify him for," "On May 07, 2014, Phuoc-le assigned all his claims against Defendants including but not limited to contractual, statutory and tort claims," and "[a]s a result Phuoc-le assigned his claims to Plaintiff and Plaintiff is entitled to recover the amount of his Consent Judgment and Phuoc-le damages of Attorney fees and costs and other economic losses." (Compl., ¶¶ 6-10, 16-17, 25) The complaint alleged the following counts against Defendants:[2]

### Count I

26. The Plaintiff sets forth paragraph 1 through 24 as if fully set forth herein.

27. To the extent the Defendants contest the assignment or the validity of the terms Plaintiff seeks a declaration that (1) the assignment and each of its terms is valid and enforceable and that (2) the Defendants do not have a valid defense to enforcement of the assignment.

### Count II

28. The Plaintiff sets forth paragraph 1 through 26 as if fully set forth herein.

29. Title 22 of the Virgin Islands code governs insurance transactions affecting subjects located in the U.S.V.I. See 22 VIC 1. Insurance carriers owe a duty of good faith and honesty and equity in all insurance matters A breach of those duties creates extra contractual, quasi contractual, and tort liability.

30. Defendant Lloyds [of London] breached that duty when it failed to properly underwrite Phuoc-le's policy and failed to reveal the same to him.

31 Defendant Lloyds of London further breached that duty when it refused to reform Phuoc-le's insurance policy to cover the claims of Kitnurse.

32. The Plaintiff sets forth paragraph 1 through 30 as if fully set forth herein.

33. Marshall and Sterling was acting as agent for Defendant Lloyds of London.

34. To the extent the policy as written did not cover Plaintiffs claims against Phuoc-le the Defendant Marshall and Sterling breached its contractual duties to Lloyds of London of which Phuoc-le was a third party beneficiary.

35. As a result Marshall and Sterling is liable to Phuoc-le and by assignment to Plaintiff in the amount of one million dollars plus Phuoc-le's Attorney fees and costs and pre and post judgment interest.

### COUNT IV

36. The Plaintiff sets forth paragraph 1 through 34 as if fully set forth herein.

37. As agent of Lloyds of London, Marshall and Sterling negligently and improperly underwrote Phuoc-le's insurance policy.

---

[2] Plaintiff did not include the name of the specific cause of action for each count. Thus, the statement of each cause of action provided by Plaintiff for each count is reproduced herein.

38. Defendants failed to warn or inform Phuoc-le that it had not properly underwritten the insurance policy in breach of its duties to do so.

39. As a result Phuoc-le suffered damages as set forth herein and which were assigned to Plaintiff.

## COUNT V

40. The Plaintiff sets forth paragraph 1 through 38 as if fully set forth herein.

41. To the extent Marshall and Sterling was the agent of Phuoc-le then it breached its duties as agent when it failed to properly underwrite the Phuoc-le insurance policy.

42. Defendant Marshall and Sterling failed to inform Phuoc-le that the policy had not been properly underwritten.

43. As a result Phuoc-le suffered damages as set forth herein which he has assigned to Plaintiff.

## COUNT VI

44. The Plaintiff sets forth paragraph 1 through 42 as if fully set forth herein.

45. Phuoc-le went to Defendants to obtain liability insurance that would defend and indemnify him against all claims for negligent conduct.

46. Defendants represented to Phuoc-le that it had underwritten an insurance policy for Phuoc-le that would insure Phuoc-le for all claims of negligence.

47. Phuoc-le reasonably relied on the representations of the Defendants to his detriment.

48. Defendants knew or should have known that those representations were not accurate but failed to disclose the same to Phuoc-le.

49. Defendants engaged in negligent misrepresentation.

50. Defendants engaged in intentional misrepresentation.

51. Defendants engaged in misrepresentation as set out in section 539, 543, 545, 552 of the Restatement of Torts.

52. Phuoc-le relied on those misrepresentations to his detriment.

53. As a result Phuoc-le was damaged as set forth herein and has assigned those damages to the Plaintiff.

## COUNT VII

54. The Plaintiff sets forth paragraph 1 through 44 as if fully set forth herein.

55. Upon information Defendants knew that they did not intend to provide Phuoc-le with an insurance policy that would insure him for all claims of negligent liability including but not limited to the types of claims of the Plaintiff.

56. Defendants knew Phuoc-le believed and expected Defendants to provide him with a policy that insured him against all claims and knew if failed to do so but failed to disclose those facts to Phuoc-le.

57. Defendants also affirmatively represented to Phuoc le that the insurance policy provided to him and for which he paid covered him for all claims of liability as a result of negligent conduct and Defendants knew those representations were false.

58. Phuoc-le reasonably relied on those representations to his detriment.

59. Defendants are in violation of sections 530, 531, 532, 534, 536, 538A, 539, 541A, 542, 545 of the Restatement of Torts.

60. As a result Phuoc-le sustained damages as alleged herein which he has assigned to Plaintiff.

¶ 3     A copy of the consent judgment and a copy of the assignment and agreement not to execute (hereinafter "Assignment Agreement") are attached to the complaint as Exhibit 1 and Exhibit 2, respectively. On March 25, 2015, the Court entered a sua sponte order seeking proof of service for Defendant Lloyds of London. In response, on March 30, 2015, Plaintiff filed a motion for leave to serve Defendant Lloyds of London out of time. On June 29, 2015, the Court entered an order whereby the Court found that Plaintiff has failed to demonstrate good cause but exercised its power to grant a discretionary extension of time and granted Plaintiff's motion for leave to serve Defendant Lloyds of London out of time, and ordered Plaintiff to serve Defendant Lloyds of London within forty-five (45) days from the date of entry of the order. On July 1, 2015, the Court inadvertently entered another order granting Plaintiff's motion for leave to serve Defendant Lloyds of London out of time and ordered Plaintiff to serve Defendant Lloyds of London within sixty (60) days from the date of entry of the order.

¶ 4     On September 4, 2015, Plaintiff filed a notice of proof of service of the summons and complaint upon Defendant Lloyds of London and attached a copy of the summons as Exhibit 1. According to the return of service for the summons, the summons and complaint was served on Defendant Lloyds of London on August 17, 2015. On the same date, September 4, 2015, Defendant Lloyds of London filed a limited entry of appearance to quash service and moved to dismiss for untimely service and a motion to quash service and dismiss complaint against Defendant Lloyds of London (hereinafter "Motion to Quash"). Plaintiff filed an opposition thereto and Defendant Lloyds of London filed a reply thereafter. In its Motion to Quash, Defendant Lloyds of London asked the Court to reconsider its previous June 29, 2015 order granting Plaintiff's motion for leave to serve Defendant Lloyds of London out of time and moved to quash service and dismiss the

complaint. Defendant Lloyds of London also advised the Court that "most of the same issues in this case were already being litigated with [Defendant Lloyds of London] in another case." (Motion to Quash, p. 1) In Plaintiff's opposition to Defendant Lloyds of London's Motion to Quash, Plaintiff indicated that Plaintiff construed Defendant's motion as being filed pursuant to Rule 12(b)(5) of Federal Rules of Civil Procedure and requested the Court to deny Defendant's motion. Thereafter, Defendant Lloyds of London filed a reply to Plaintiff's opposition.

¶ 5     On May 11, 2018, Plaintiff filed a motion to amend complaint and moved to substitute a personal representative for Plaintiff's estate since Plaintiff has passed away on August 30, 2017.[3] On October 22, 2018, an interim mediation report was filed regarding the October 12, 2019 mediation conference between "All Plaintiffs,"[4] "Plaintiff's trial counsel," "All Defendants (except [Defendant Lloyds of London])," and "Defendant's trial counsel." (Interim Mediation Report, p. 1) The interim mediation report indicated that "[t]he conflict has been partially resolve," "[t]he parties are submitting a stipulation for the Court's approval," and "[s]ome issues still require Court resolution." (Interim Mediation Report) More specifically, the interim mediation report indicated that "[Defendant M&S appeared and the case has been completely resolved as to [Defendant M&S]," "[Defendant] Lloyds of London did not appear," and "[t]he case remains pending as to [Defendant Lloyds of London." (Id.) On November 7, 2018, Plaintiff and Defendant M&S filed a stipulation for dismissal with prejudice of Plaintiff's claims against Defendant M&S.[5]

---

[3] The motion was signed by Mary Faith Carpenter, Esq. of Lee J. Rohn and Associates, LLC, as "Attorneys for Plaintiff." (Motion to Amend Complaint, p. 2)

[4] As noted above, Plaintiff—Michael Kitnurse—has passed away before the interim mediation. There is no indication of the person(s) that appeared on behalf of Plaintiff at the interim mediation report.

[5] The stipulation was signed by Lee J. Rohn, Esq. of Lee J. Rohn and Associates, LLC, as "Attorneys for Plaintiff" and James L. Hymes, III, Esq. of Law Offices of James L. Hymes, III, P.C., as Attorneys for Defendant M&S. (Stipulation for Dismissal with Prejudice of Plaintiff's Claims Against Defendant M&S, p. 2)

¶ 6     On December 10, 2018, Plaintiff filed a motion for entry of default against Defendant

Lloyds of London.[6] On February 20, 2019, Defendant M&S filed a notice to the Court (hereinafter

"February 20, 2019 Notice"). On February 22, 2019, Plaintiff filed a response to Defendant M&S's

February 20, 2019 Notice and motion to enforce settlement.[7] On March 7, 2019, Defendant M&S

filed a document that consisted of (i) motion to strike Plaintiff's response and motion to enforce

settlement, (ii) opposition to Plaintiff's motion to enforce settlement, (iii) motion to enforce and

enter judgment on the mediated settlement agreement, and (iv) notice of filing the document under

seal. On March 15, 2019, Defendant M&S filed a motion for entry of order permitting filing under

seal, nunc pro tunc. On December 10, 2019, Plaintiff and Defendant M&S filed a joint motion for

dismissal with prejudice as to Defendant M&S.[8]

¶ 7     On May 26, 2020, the Court entered a memorandum opinion and order whereby the Court

ordered, inter alia, that Counts II, IV, VI, and VII of the complaint are dismissed as against

Defendant Lloyds of London.[9] (May 26, 2020 Order)

## DISCUSSION

¶ 8     The Court will address the motions in chronological order.

### I.     Plaintiff's Motion to Amend Complaint, filed on May 11, 2018[10]

---

[6] The motion was signed by Lee J. Rohn, Esq. of Lee J. Rohn and Associates, LLC, as "Attorneys for Plaintiff." (Motion for Entry of Default, p. 10)

[7] The response and motion was signed by Lee J. Rohn, Esq. of Lee J. Rohn and Associates, LLC, as "Attorneys for Plaintiff." (Response to Defendant M&S's February 20, 2019 Notice and motion to enforce settlement, p. 2)

[8] The joint motion was signed by Lee J. Rohn, Esq. of Lee J. Rohn and Associates, LLC, as "Attorneys for Plaintiff" and James L. Hymes, III, Esq. of Law Offices of James L. Hymes, III, P.C., as Attorneys for Defendant M&S. (Joint Motion for Dismissal with Prejudice as to Defendant M&S, p. 2)

[9] The May 26, 2020 memorandum opinion and order addressed Defendant Lloyds of London's motion to quash and dismiss complaint, filed on September 4, 2015; the Court granted in part and denied in part Defendant Lloyds of London's motion to quash and dismiss complaint.

[10] While the title of Plaintiff's motion is "motion to amend complaint," Plaintiff's motion sought to substitute a personal representative of Plaintiff's estate because Plaintiff passed away. Plaintiff's motion referenced Rule 25 of Virgin Islands Rules of Civil Procedure, which governs the substitution of a party upon death. The Virgin Islands Supreme Court has consistently held that the substance, not the title, of a motion determines under which rule the motion is construed. *See Rodriguez v. Bureau of Corr.*, 70 V.I. 92, ¶ 9 (V.I. 2019) (citing *Joseph v. Bureau of Corrections*, 54 V.I. 644, 648 n.2 (V.I. 2011) (explaining that this Court has consistently held that the substance, not

¶ 9     In his motion, Plaintiff advised that Michael Kitnurse died on August 30, 2017 and attached a copy of a death certificate from Florida for decedent Mike M. Kitnurse. (Motion; Exhibit 1) Plaintiff also advised that Kayla Melisa Kitnurse, daughter of decedent Mike M. Kitnurse, has consented to serve as the personal representative of the estate of Mike M. Kitnurse and attached notarized document titled "Consent to Serve as Personal Representative." (Motion; Exhibit 2) As such, Plaintiff sought leave to file a first amended complaint.

¶ 10    In its opposition, Defendant M&S pointed out that "[t]he motion does not indicate if Michael Kitnurse and Mike M. Kitnurse are in fact the same individuals" and "[t]here is no explanation as to why the original Complaint was in the name of Michael Kitnurse and/or why his Estate is denominated Mike M. Kitnurse." (Opp., pp. 1-2) Defendant M&S also pointed out that: (i) "The motion as filed does not indicate if Michael Kitnurse died intestate or left a will…[it] only seeks to permit someone to act as the Personal Representative of the Estate without indicating if that person is an administratrix or an executrix." (Id., at p. 2); (ii) "The motion as filed does not indicate where or if an official estate proceeding has been instituted in this or some other jurisdiction" and "[t]his is important since the personal representative acts on behalf of an estate." (Id.); (iii) "Kayla Melissa Kitnurse is a resident of the State of Florida, and does not reside in the Territory" and "Section 235(a) of Title 15 of the Virgin Islands Code provides that non-residents are not qualified to act as the executor or administrator of the estate in the Virgin Islands." (Id.) Defendant M&S noted that "it does not necessarily oppose a substitution of someone to represent the interest of Michael Kitnurse if he is deceased" and instead, "only requests that this Court enter

---

the title, of a motion determines its meaning). As such, the Court will construe Plaintiff's motion to amend complaint as a motion for substitution of a personal representative on behalf of the estate of Michael Kitnurse.

an appropriate order which allows for the proper representation of the interests of the estate of Mr. Kitnurse in accordance with the laws governing the same."

¶ 11    In his reply,[11] Plaintiff stated that since learning that the decedent's legal name was "Mike M. Kitnruse" rather than "Michael M. Kitnurse," Plaintiff has sought to amend the party's name to "Estate of Mike M. Kitnurse" and that "[t]his is simply the correction of a clerical error." (Reply, p. 1) Plaintiff also stated that he "sought to amend its complaint to substitute the decedent's daughter, Kayla Melissa Kitnurse, as the personal representative of decedent's estate of the purposes of this litigation because Mike Kitnurse is now deceased." (Id.) Plaintiff argued that Kayla Melissa Kitnurse is qualified as a personal representative in this instance for the following reasons: (i) Title 15 V.I.C. § 235(a) "codifies the qualifications of an executor or administrator in the administration of an estate" and "[t]hat is not what Plaintiff seeks to do here." (Id., at p. 2); (ii) Title 5 V.I.C. § 78 is applicable here and "this Court has consistently granted substitutions in similar survival and wrongful death actions pursuant to Title 5 V.I.C. § 78."[12] (Id., at pp. 2-3); (iii) Rule 25(a)(1) is applicable here and Plaintiff timey filed its motion to amend complaint "well within the prescribed two-year period." (Id., at p. 3); and (iv) While "[t]he decedent died intestate and his estate has not been opened to probate…that does not prevent the substitution of a personal representative in this tort action."[13] (Id., at p. 4)

---

[11] Plaintiff contemporaneously filed a motion for leave to file Plaintiff's reply late. At this time, the Court will include the arguments made therein for the sake of completeness, but the Court will reserve ruling on the motion for the reasons stated in this Memorandum Opinion and Order.

[12] Plaintiff referenced: *Augustin*, 2017 WL 3614263 at *15 ("The personal representatives sought leave to substitute leave within two years after the date of each respective plaintiff's death. The requests were also made on motion, served on Defendants…Accordingly, the Court will grant each motion by separate order.") (internal citation omitted); *Jones v. Lockeed Martin Corp.*, 2017 WL 5633319 at *18 (Super. Ct. Nov. 22, 2017) ("[T]he Court will grant the motion in Velez since L. Velez timely requested leave to substitute herself in place of A. Velez and continue his lawsuit.")

[13] Plaintiff referenced: *Augustin*, 2017 WL 3614263 at *7, 15 ("[the Virgin Islands Supreme] Court nevertheless chose to adopt a rule of civil procedure that expressly and unambiguously eliminated the requirement to open an estate as a prerequisite for bringing or maintaining a wrongful death claim or a survival claim.") ("Claims brought by or continued by a personal representative are often referred to as a survival claims or survival actions."); *Der Weer*, 2014

### A. Standard of Review

¶ 11    Under Virgin Islands law, when someone dies, two things happen procedurally. *Augustin v. Hess Oil Virgin Islands Corp.*, 67 V.I. 488, 505 (Super. Ct. Aug. 23, 2017). "First, any personal injury claims the person may have had abate unless there is authority extending the life of those claims." *Id.* (*quoting Der Weer v. Hess Oil V.I. Corp.*, 61 V.I. 87, 102 (Super. Ct. 2014)). Under Title 5 V.I.C. § 77, claims "arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action." Title 5 V.I.C. § 77. "Second, if a person's death was caused by or resulted from someone else's actions or failure to act, then that person's survivors can only recover if authority creates a cause of action for wrongful death." *Augustin*, 67 V.I. at 506 (*quoting Der Weer*, 61 V.I. at 102). Title 5 V.I.C. § 76 gives the survivors of someone whose death occurred wrongfully, the right to sue for wrongful death. Title 5 V.I.C § 76.[14] It is important to note the distinctions between wrongful death claims and survival claims. "Wrongful death is a new claim — with its own elements that must be alleged in a complaint and proven at trial — whereas a survival claim is not really a claim. It is merely a

---

WL 7340231, *11 (Super. Ct. Dec. 22, 2014), as corrected (Dec. 23, 2014) ("Damages a deceased person may have suffered from a personal injury are recovered in a survival action...").

[14] Title 5 V.I.C. § 76 provides, in relevant part:

§ 76. Action for wrongful death

Right of action

(c) When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or water-craft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this section notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony.

vehicle for pursuing someone else's claims." *Id.*, 67 V.I. at 521 (*Der Weer*, 64 V.I. at

138 (quotation marks, brackets, and citation omitted)).

¶ 12　　If a claim has been filed and is still pending when the person dies, the procedure for the

substitution of the decedent's personal representatives or successor requires a motion and is

governed by Title 5 V.I.C. § 78 (hereinafter "Section 78") and Rule 25 of the Virgin Islands Rules

of Civil Procedure (hereinafter Rule 25"). Title 5 V.I.C. § 78;[15] V.I. R. Civ. P. 25.[16] Both Section

78 and Rule 25 set forth a two-year deadline after the date of the death to file the motion for

substitution. *Id.* While some jurisdictions require a personal representative, such as an executor or

an administrator, to be appointed first, the Virgin Islands Supreme Court, in promulgating Rule

17(e) of Virgin Islands Rules of Civil Procedure (hereinafter "Rule 17(e)", expressly eliminated

the requirement to open an estate as a prerequisite for bringing or maintaining wrongful death suits

---

[15] Title 5 V.I.C. § 78 provides:

§ 78. Substitution of parties

No action shall abate by the death or disability of a party or by the transfer of any interest therein, if the cause of action survives or continues. In case of the death or disability of a party, the court may at any time within two years thereafter, on motion, allow the action to be continued by or against his personal representatives or successor in interest.

[16] Rule 25 provides, in relevant part:

Rule 25. Substitution of Parties

(a) Death.

(1) *Substitution if the Claim Is Not Extinguished.* If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. The motion may be granted at any time within two years after the death.

(2) *Continuation Among the Remaining Parties.* After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties. The death should be noted on the record.

(3) *Service.* A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner.

filed under Title 5 V.I.C. § 76 and survival actions filed under Title 5 V.I.C. § 77. V.I. R. CIV. P.

17(e)[17]; *see also Raymond v. Assefa*, 69 V.I. 953 (V.I. 2018).[18]

### B.  Michael Kitnurse v. Mike M. Kitnurse

¶ 13    Before the Court reaches the issue of the substitution of a personal representative for

Plaintiff's estate, the Court must address the issue of whether Michael Kitnurse, the named plaintiff

in this action, and Mike M. Kitnurse, the named decedent on the death certificate submitted by

Plaintiff, are the same individual. According to the document titled "Case Information and Litigant

Data Form" Plaintiff filed on September 3, 2014, the date of birth for Michael Kitnurse is

September 10, 1970 which matches the date of birth on the death certificate for Mike M. Kitnurse.

Moreover, Mike is a common name derived from Michael. Additionally, the Court cannot find,

and Defendant M&S did not claim in its opposition, any benefits or advantages gained in Plaintiff's

position in this case from Plaintiff's death. As such, the Court concludes that Michael Kitnurse

and Mike M. Kitnurse are the same individual and the Court will take judicial notice of the death

---

[17] Rule 17 of Virgin Islands Rules of Civil Procedure provides, in pertinent part, as follows:

> Rule 17. Plaintiff and Defendant; Capacity; Public Officers
>
> (e) Actions for Wrongful Death and Survival.
>
> In wrongful death suits filed under 5 V.I.C. § 76 and in survival actions filed under 5 V.I.C. § 77, the action may be prosecuted in the name of a plaintiff identified in the complaint as acting as a personal representative. The named plaintiff shall serve as personal representative throughout the proceeding unless replaced by order of the court. V.I. R. CIV. P. 17(e).

[18] The Virgin Islands Supreme Court pointed out in *Raymond*,

> Importantly, the accompanying Advisory Committee Note emphasizes that the purpose of Rule 17(e) is to clarify that a probate estate need not be opened as a prerequisite to appointment of a personal representative under sections 76 or 77:
>
> > Subpart (e) is a provision dealing specifically with wrongful **death** and survival actions under 5 V.I.C. §76 and § 77. *To avoid any unnecessary requirement to open an estate*, and to permit swift commencement of proceedings where required for statute of limitations or other purposes, this subpart of the rule provides that an action may be prosecuted in the name of a plaintiff who is identified in the complaint as acting as a personal representative, although court appointment to that position has not at that time been made. The named plaintiff will serve as personal representative throughout the proceeding unless replaced by order of the court. V.I. R. CIV. P. 17 ADVISORY COMMITTEE NOTE (emphasis added).

> *Raymond*, 69 V.I. at 958-59.

of Plaintiff on August 30, 2017. *See In re Deceased Plaintiffs*, 2020 VI SUPER 53 at ¶ 50 ("Courts

can take judicial notice of the death of a party."); *Cf. People ex rel. J.G.*, 59 V.I. 347, 365 n.16

(V.I. 2013) (courts can take judicial notice of death certificates).

¶ 14    This raises an interesting issue. Plaintiff—Michael Kitnurse—could not move for the

substitution of a personal representative here because he died. So, the question becomes whether

Plaintiff's attorney has the authority to move for the substitution of a personal representative here

after Plaintiff's death?  Courts in the Virgin Islands have acknowledged the general rule that "the

death of the client revokes his attorney's authority to act for him." *In re Alumina Dust Claims*, 67

V.I. 172, 189 n.11 (Super. Ct. Jan. 10, 2017); *see also, Jones v. Lockheed Martin Corporation*, 68

V.I. 158, 189 (Super. Ct. Nov. 22, 2017) (collecting cases). If that is the case, then Plaintiff's

attorney could not move for the substitution of a personal representative for Plaintiff's estate here

because Plaintiff's attorney lacked the authority. *Jones*, 68 V.I. at 191 (the court held that "death

of the client revokes his attorney's authority to act for him, and that that same attorney has no

authority to act in a pending case on behalf of a deceased client unless and until the client's heirs,

executor, administrator or duly-appointed personal representative re-retain the same attorney or

the client otherwise authorized the attorney to act after his death") (internal quotations and citation

omitted). Currently, there are no Virgin Islands law or rules and no prior precedent from the Virgin

Islands Supreme Court addressing this issue. "When presented with a question concerning what

law applies, and the law is not settled by binding precedent or statute, courts applying Virgin

Islands law must consider and weigh three factors: what approach Virgin Islands courts have taken

in the past, what approach courts in other jurisdictions take, and lastly, what approach represents

the soundest rule for the Virgin Islands." *Jones*, 68 V.I. at 190 (citing *Gov't of the V.I. v. Connor*,

60 V.I. 597, 603 (2014) (*per curiam*) ("[T]he Superior Court, when considering a question not

foreclosed by prior precedent from this Court, must perform a three-part analysis as set forth

in *Banks* [*v. International Rental and Leasing Corporation*, 55 V.I. 967 (2011)].")). The Court will

set a briefing schedule and give the parties an opportunity to address this question.

### C. Substitution of Personal Representative

¶ 15    Assuming *arguendo* that, after reviewing the parties' briefs and conducting its own *Banks*

analysis, the Court determines that the soundest rule of law for the Virgin Islands is to hold that

death does not terminate the attorney-client relationship, and thereby, the Court finds that

Plaintiff's attorney had the authority to move for the substitution of a personal representative here.

As noted above, once an action has been commenced and a necessary party to the action dies, both

Section 78 and Rule 25 govern the procedure for the substitution of the decedent's personal

representative or successor. Here, Plaintiff's motion for substitution was timely filed within the

two-year deadline set forth in Section 78 and Rule 25.

¶ 16    In his motion, Plaintiff argued that "this Court has consistently granted substitutions in

similar survival and wrongful death actions pursuant to Title 5 V.I.C. § 78" and cited to *Augustin*

and *Jones* in support of his argument. However, those cases are distinguishable from this instant

case. In *Augustin* and *Jones*,[19] the plaintiffs commenced their lawsuits against the defendants for

---

[19] In *Augustin*, the plaintiffs commenced their personal injury actions against the defendants—to wit, they sued "for negligence and demanded damages allegedly from exposure to asbestos." 67 V.I. at 494. Subsequently, during pre-trial litigation, eight plaintiffs passed away and personal representatives were appointed by the Probate Division of the Superior Court and each moved the Court to continue the lawsuits as survival actions. 67 V.I. at 493-94. The Court had some reservations regarding the procedures for appointing personal representatives, but ultimately found these reservations mooted by the promulgation of Rule 17(e) and granted each plaintiff's motion. *Id.*, 67 V.I. at 520.

In *Jones*, the plaintiff, A. Velez, commenced his personal injury action against the defendants—to wit, he "sued Lockheed Martin, Martin Marietta, and GEC for damages allegedly from exposure to asbestos and other toxic substances during the time he worked at the former Martin Marietta alumina refinery on St. Croix." *Jones*, 68 V.I. at 185. Subsequently, during pre-trial litigation, A. Velez passed away and his wife, L. Velez, upon petition, was appointed personal representative by the Probate Division of the Superior Court. L. Velez then filed a motion to substitute herself in place of her husband to continue the lawsuit. *Id.* The *Jones* court determined that A. Velez's wife's timely filed motion to substitute was properly before the court and granted her motion to substitute. The court did not discuss the applicability of Rule 17(e), but if it were addressed, the Court would have found Rule 17(e) applicable because (i) A. Velez sued the defendants for alleged physical injury, (ii) under Title 5 V.I.C. § 77, "[a] thing arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall

physical injury, and therefore, those lawsuits are within the scope of Title 5 V.I.C. § 77. Thus, when those plaintiffs passed away, Rule 17(e) was applicable and eliminated the requirement to open an estate as a prerequisite. In this case, Plaintiff did not sue Defendants for physical injury or wrongful death. This litigation was commenced by Plaintiff, as the assignee of claims from John Phuoc-le d/b/a Nails Time pursuant to the Assignment Agreement, against John Phuoc-le d/b/a Nails Time's insurance companies and/or underwriters. *See* Compl. As such, Plaintiff's lawsuit does not fall under the scope of Title 5 V.I.C. § 76 or Title 5 V.I.C. § 77, and thereby Rule 17(e) is not applicable since Rule 17(e) only expressly eliminates the requirement to open an estate as a prerequisite for bringing or maintaining wrongful death actions under Title 5 V.I.C. § 76 and survival actions under Title 5 V.I.C. § 77.[20] This raises several questions.

### 1. Which Claims Survive After a Person's Death?

¶ 17    Not all claims survive after a person's death. *See e.g.,* Title 5 V.I.C. § 37(a) (If a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, **and the cause of action survives**, an action may be commenced by his personal representatives, after the expiration of the time and within one year from his death.") (emphasis added); Title 5 V.I.C. § 78 ("No action shall abate by the death or disability of a party or by the transfer of any interest therein, **if the cause of action survives or continues**.") (emphasis added). In the Virgin Islands, personal injury claims survive after a person's death. Title 5 V.I.C. § 77 ("A

---

not abate … by reason of the death of the person injured…", and (iii) Rule 17(e) expressly eliminates the requirement to open an estate as a prerequisite for bringing or maintaining survival actions under Title 5 V.I.C. § 77.

[20] The Court finds the pertinent language of Rule 17(e) plain and unambiguous, and thereby the Court will give effect to the plain words of the rule. *See Banks of N.S. v. Dore*, 57 V.I. 105, 113-14 (Super. Ct. Oct. 19, 2012) (citing *Corraspe v. People*, 53 V.I. 470, 480-481 (V.I. 2010) ("The rules of this Court are applied using the same standards which govern the construction of statutes" and "the primary objective of the trial court is to give effect to plain words utilized in the subject rule."); *People v. Rivera*, 54 V.I. 116, 125 (Super. Ct. 2010) ("The procedural rules of courts are construed in accordance with the canons of statutory construction."); *In re People*, 49 V.I. 297, 306 (V.I. 2007)) ("We believe the pertinent language is plain and unambiguous, thereby dispensing with a resort to the canons of construction.").

thing arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate ... by reason of the death of the person injured...") However, currently, there are no Virgin Islands laws or rules and no prior precedent from the Virgin Islands Supreme Court concerning which claims, aside from personal injury claims, survive after a person's death. Thus, before the Court reaches the issue of the substitution of a personal representative, the Court must first determine which of Plaintiff's claims, if any, survived Plaintiff's death. Plaintiff and Defendant M&S did not address this issue in their respective briefs. As such, the Court will set a briefing schedule and give the parties an opportunity to address this question.

### 2. Whether an Estate Must be Opened Before the Appointment of a Personal Representative When Rule 17(e) does not Apply?

¶ 18     Assuming some or all of Plaintiff's causes of action survives Plaintiff's death, then the Court must determine whether an estate must be opened before the appointment of a personal representative to continue a survival action when Rule 17(e) does not apply. Currently, there are no Virgin Islands laws or rules and no prior precedent from the Virgin Islands Supreme Court addressing this issue. The *Augustin* court had the following concerns regarding the appointment of a personal representative without first opening an estate.

> ...The Personal Representatives are correct in one regard: an "estate exists upon the death of the decedent, whether a probate has been opened or not. The opening of probate does not create an estate." (Supp. Br. 13.) ...

>> "The term probate is commonly used with reference to the formal establishment of a document as the last will and testament of the testator as a basis for the distribution of his property and the issuance of letters testamentary to the persons named therein as executors. ... The term "probate," however, also has a broader meaning, including all proceedings incident to the administration and settlement of estates and perhaps also the establishment of the meaning of a will as well as its execution."
>> *In re Estate of Alexander*, 63 A.D.2d 612, 405 N.Y.S.2d 613, 614 (1978) (Murphy, P.J., dissenting) (quoting *Chase Nat'l Bank v. Chicago Title & Trust Co.*, 164 Misc. 508, 299 N.Y.S. 926, 941 (Sup. Ct. 1934)); *accord In re: Will of Lamb*, 303 N.C. 452, 279 S.E.2d

781, 786 (1981) ("The word 'probate' means the judicial process by which a court of competent jurisdiction in a duly constituted proceeding tests the validity of the instrument before the court, and ascertains whether or not it is the last will of the deceased." (citing *In re Will of Marks*, 259 N.C. 326, 130 S.E.2d 673 (1963); *Brissie v. Craig*, 232 N.C. 701, 62 S.E.2d 330 (1950); *Steven's Executors v. Smart's Executors*, 4 N.C. 83 (1814)).

It is this broader and more general sense of the word probate the Court had in mind, the proceedings to administer, settle, and transfer one person's property — both real and personal, including choses in action — to another and how courts in the Virgin Islands empower a personal representative to take on some of this responsibility if letters testamentary or of administration are not issued. ... If the Court was imprecise earlier, the Court elaborates here, because one of the reservations the Court had concerned potential creditors, particularly if the phrase personal representative was intended to be synonymous with the terms executor or administrator, as well as other heirs of the decedent.

If personal representatives are appointed in the Superior Court of the Virgin Islands through "what are essentially *ex parte*, non-adversarial miscellaneous proceedings that give a semblance of legal status to an estate, but without formally opening an estate or, for example, giving notice to creditors or requiring that the personal representative acting on the estate's behalf be bonded," *Alumina Dust Claims*, 2017 V.I. LEXIS 2, at \*33 n.3 (citing 15 V.I.C. § 239(a)), then indeed "[c]oncerns could arise." *Id.* First, the judge presiding over the civil action has no assurances that the personal representative appointed by the Probate Court is the proper party. *But see* V.I. R. Civ. P. 25(a)(1) ("If a party dies and the claim is not extinguished, the court may order substitution of the proper party."). That is, the judge presiding over the civil action does not determine whether the proposed personal representative is the proper party. Instead, the probate court makes the appointment through an *ex parte*, non-adversarial, miscellaneous probate proceeding that occurs outside of the civil action. The tail wags the dog here. What else can the judge presiding over the civil action do, other than allow substitution by the person the probate court appointed? If that is correct, it effectively deprives the judge of any discretion to decide whether to allow substitution and who to substitute. *Cf. In re Estate of Johnson*, 2010 WY 63, 231 P.3d 873, 881 (2010) ("The only test of who is appointed as personal representative, despite the lack of guidance within the wrongful death act, cannot simply be who first gets to the courthouse.").

Similarly, regarding creditors, must the personal representative appointed through a miscellaneous probate proceeding give notice to creditors? Virgin Islands law requires that "[e]very executor or administrator shall, immediately after his appointment, publish a notice . ... Such notice shall require all persons having claims against the estate to present them, with the proper vouchers, within six months from the date of the notice, to the executor or administrator." 15 V.I.C. § 391. If executors and administrators are a "specie" of personal representatives, then shouldn't even the personal representative appointed to take over a pending civil action have to give notice to creditors?[21] Or, does the personal

---

[21] The *Augustin* court noted that "Virgin Islands law does not define the phrase 'personal representative' – at least not in the context of prosecuting or defending civil actions in court" and thus, the court had concerns regarding the capacity of the personal representative. 67 V.I. at 506. The *Augustin* court further noted that Title 5 V.I.C. § 4901 and Title 15

representative only have to commence probate proceedings and formally open an estate once judgment is entered or a settlement reached, assuming money exchanges hands? Or can the personal representative bypass probate entirely? If so, it could mean that Virgin Islands courts are unknowingly complicit in helping the heirs avoid the creditors' claims of the deceased. Assume for argument's sake that a jury awards Mrs. Calixte or Clarke-Baptiste three million dollars in damages. Assume further that Mr. Calixte or Mr. Clarke, before they died, left a two-thousand-dollar balance due on a credit card or a five-hundred-dollar bill with a local vendor. Mrs. Calixte and Clarke-Baptiste's response to the Court's concerns is that, that's not their concern. They do not have to give notice to creditors at any time, even if after they receive a sizeable settlement, because they do not have to commence formal probate proceedings at any time. Instead, "the onus is on the *creditor* to open probate: 'All awards for the decedent's estate are subject to the claims of *creditors who have complied with the requirements of probate law* concerning claims.' " (Supp. Br. 7-8 (quoting 5 V.I.C. § 76(e)).)

Lastly, if the person appointed personal representative to maintain or commence a survival action does not have to be named in a will or qualified under the law as an administrator, *see* 15 V.I.C. §§ 235(a), 236, then disputes could arise later over whether that person was in fact the proper party or even a proper party. *Cf.* V.I. R. Civ. P. 25(a)(1) ("[T]he court may order substitution of *the proper party*." (emphasis added)). Two other Superior Court judges have raised similar concerns. *See generally Brown v. Lorillard, Inc.*, ST-10-CV-692, 2012 V.I. LEXIS 107, at *5-7 (Super. Ct. Mar. 30, 2012) ("While this Court cannot disregard the persuasive authority allowing an individual who has not received letters testamentary or letters of administration to represent a yet-to-be probated estate, the Court does question the wisdom of eliminating the initiation of probate proceedings, at least the acquisition of letters testamentary or letters of administration, and only reluctantly follows the holdings cited by Plaintiff. *This Court has significant reservations about allowing the substitution to take place*. Among those reservations are: (1) it is not clear whether decedent's son, Christian Brown, is decedent's

V.I.C. § 601 support viewing the terms "executor, "administrator," and "personal representative" synonymously, and also noted the resulting conflict between Title 15 V.I.C. § 601 and Title 5 V.I.C. § 78 if these terms of art are not synonymous.

> If the phrase "personal representative" does not include "executor" and "administrator," meaning these terms of art are not synonymous, then section 601, which directs that the executor or administrator must continue the action after death, directly conflicts with sections 78 of title 5, which directs that the personal representative continues the action after death. *Compare* 15 V.I.C. § 601 ("When the cause of action survives, as herein provided, the executors or administrators may maintain an action thereon against the party against whom the cause of action accrued, or, after his death, against his personal representatives."), *with* 5 V.I.C. § 78 ("In case of the death or disability of a party, the court may ... allow the action to be continued by ... his personal representatives."). But if executors and administrators are simply two types, or species as the Personal Representatives put it, of personal representatives — just as magistrates, judges, and justices are all types of judicial officers — then there is no conflict. A personal representative would include both an executor and an administrator. That would also mean that a personal representative must be either an executor or an administrator.

> *Augustin*, 67 V.I. at 507-08.

Nevertheless, the issue of whether the terms "executor," "administrator," and "personal representative" are synonymous was not resolved in *Augustin*.

only heir at law; (2) it is not clear whether Christian Brown will be able to actually participate as the legal representative of the estate; (3) it is not clear whether there are any assets other than the 'choice in action' belonging to the estate; (4) if the will is probated, and counsel for Plaintiff becomes the executor, there could be a conflict of interest; (5) it is unclear whether the creditors of the estate are being timely advised of existing or potential assets to satisfy any indebtedness of the estate; and (6) it is unclear whether there exist any other heirs at law who may contest the will. In light of these concerns, although the Court will allow the substitution, the Court will keep a watchful eye on the proceedings, and reserve the right to reverse its decision on substitution should sufficient information surface confirming inequities." (footnote omitted)); *England v. Lorillard, Inc.*, ST-10-CV-631, 2012 V.I. LEXIS 106, at \*3-4 (Super. Ct. Jan. 23, 2012) ("The Defendants argue that without being appointed executor of Mr. England's estate, Gerald has no authority to act as a 'personal representative or successor in interest.' The Plaintiff asserts that because a wrongful death claim is a unified claim, it must be brought by the personal representative if only one child wants it. It does not matter whether one of the children disagrees. The Court agrees with the Plaintiff that the Wrongful Death Statute governs a party's right of action, not procedure, and as such does not prevent the Court from substituting Gerald as the Plaintiff at this time. However, there does appear to be a question as to Gerald's ability to bring a wrongful death claim without being appointed executor by the probate division. The Defendants represented that they will not contest Gerald's appointment as executor. As such, in an exercise of caution, the Court will order that the Plaintiff offer Mr. England's will for probate before requiring that Gerald file an amended complaint." (quoting 5 V.I.C. § 78)). Here, for example, Burton-King petitioned for appointment as personal representative to continue Mr. Burton's lawsuit, but after the Burtons had petitioned to settle Mr. Burton's estate without administration. Because the probate court already entered its final adjudication and distributed Mr. Burton's estate, the Burtons might not be able to seek relief from that final order later, should they be unable to agree among themselves on how to distribute whatever damages may be awarded or settlement amounts received from this lawsuit. *Cf. In re Estate of Watson*, SX-91-PB-126, 2015 V.I. LEXIS 151, at \*11-15 (Super. Ct. App. Div. Mar. 19, 2015) (reopening estates governed by same law regarding relief from final judgments).

*Augustin*, 67 V.I. at 514-17 (emphasis in original).

¶ 19    The Court has the same concerns here. In *Augustin*, those concerns were mooted by the promulgation of Rule 17(e). However, as noted above, Rule 17(e) is not applicable in this matter. As such, the Court will set a briefing schedule and give the parties an opportunity to address the Court's concerns. The Court will reserve ruling on Plaintiff's motion for substitution pending receipt of the parties' briefs.

## II.     Remaining Outstanding Motions

¶ 20     The Court will similarly reserve ruling on the remaining outstanding motions listed on page

one and two of this Memorandum Opinion and Order pending receipt of the parties' briefs.

## CONCLUSION

¶ 21     Based on the foregoing, the Court will order Plaintiff, Defendant M&S, and Defendant

Lloyds of London to file supplemental briefs to address the aforementioned questions and concerns

of the Court and reserve ruling on all the motions listed on page one and two of this Memorandum

Opinion and Order at this juncture. Accordingly, it is hereby:

**ORDERED** that, **within ninety (90) days from the date of entry of this Order**, Plaintiff,

Defendant M&S, and Defendant Lloyds of London shall each file a supplemental brief and address

the following questions:

1.  Whether Plaintiff's death terminated the attorney-client relationship and revoked Plaintiff's attorney's authority to act for him and why?

2.  Which of Plaintiff's causes of action, if any, survived Plaintiff's death and why? The parties shall address each count separately. Defendant M&S and Defendant Lloyds of London shall only address the count(s) that it is defending. **Plaintiff shall include in his supplemental brief the name of the specific cause of action for each count.**

3.  Whether an estate must be opened before the appointment of a personal representative for a survival claim when Rule 17(e) does not apply and why? The parties shall address the Court's concerns regarding:
    (i)     How can the judge presiding over the civil action be assured that the personal representative appointed by the Probate Court is the proper party?
    (ii)    Whether the terms "executor," "administrator," and "personal representative" are synonymous and why? Regardless of whether these terms of art are synonymous, should the personal representative appointed to take over a pending civil action have to give notice to creditors and why?
    (iii)   If the person appointed personal representative to maintain a survival action does not have to be named in a will or qualified under the law as an administrator, *see* 15 V.I.C. §§ 235(a), 236, then disputes could arise later over whether that person was in fact the proper party or even a proper party. How could these disputes be prevented?

The parties are reminded to perform a *Banks* analysis when required and cite the proper legal authority, statute, and/or rule in support of their respective supplemental briefs. The Court will reserve ruling on all the motions listed on page one and two of this Memorandum Opinion and Order at this juncture. To be clear, each party has the opportunity to file one supplemental brief and will not be permitted to file additional briefs in response to another party's supplemental brief without leave of the Court.

**DONE and so ORDERED this** 28th **day of January 2021.**

**HAROLD W.L. WILLOCKS**
**Presiding Judge of the Superior Court**